ROLFE *v.* BURNHAM.

1. CHATTEL MORTGAGES — COLLATERAL AGREEMENT — CONSTRUC-
TION.

The authority of the mortgagee of a stock of merchandise
to sell in accordance with the terms of the mortgage may be
limited by a collateral written agreement respecting the
goods, made at the time the mortgage was executed, and,
when such agreement exists, the instruments should be con-
strued together in determining the rights of the parties.

2. SAME—AUTHORITY TO SELL—INJUNCTION.

A court of equity, therefore, will not permit an agreement
by the mortgagee to take charge of the business, and carry it
on for the benefit of all parties, to be ignored, and a sale under
the mortgage proceeded with, unless it appears that the
agreement has been violated by the mortgagor, or that the
mortgagee was induced to enter into it by fraud.

3. EQUITY—PARTNERSHIP—RECEIVERS.

Where a member of a partnership filed a bill in equity
against his copartners and certain creditors of the firm, and
the defendant copartners, in their answer, asked the appoint-
ment of a receiver, and it appeared from the pleadings and
affidavits that several mortgagees and unsecured creditors
were interested, and that the partners themselves were unable
to agree, a receiver was properly appointed.

Appeal from Shiawassee; Smith, J. Submitted Octo-
ber 9, 1896. Decided November 17, 1896.

Bill by William Rolfe and Mary Rolfe against Burn-
ham, Stoepel & Co., William Barrie & Son, H. S. Robin-
son & Co., James H. Zeigler, and John Streng to restrain
the sale of goods under a chattel mortgage. Defendants
Zeigler and Streng answered, and asked that a receiver be
appointed. From an order appointing a receiver and re-
fusing to dissolve a preliminary injunction, Burnham,
Stoepel & Co. appeal. Affirmed.

This is an appeal in chancery from an order appointing a receiver and refusing to dissolve a preliminary injunction. The case is here upon bill, answers, and affidavits. The material allegations of the bill are these: The complainants were, and had been for some time prior to June 2, 1896, copartners with defendants Zeigler and Streng under the name of Zeigler, Streng & Rolfe, doing business in the village of New Lothrop, Shiawassee county. Complainant Mary Rolfe had filed a bill on May 22, 1896, to dissolve the partnership, and had obtained a preliminary injunction restraining her copartners from collecting accounts and carrying on the business. May 23d a chattel mortgage was filed, dated May 8th, to H. S. Robinson & Co., merchants, of Detroit, for $1,464.75. June 2d complainants were proceeding under that bill to secure the appointment of a receiver. Defendants Burnham, Stoepel & Co. were creditors of Zeigler, Streng & Rolfe. Burnham, Stoepel & Co. then agreed with the complainants and their firm that, if they would not proceed to secure the appointment of a receiver, and would give them a mortgage upon their stock, they would take charge of the same, make an inventory, furnish a responsible man, and carry on the business. This was agreed to, and a mortgage was executed for $1,376.75. At the same time a written agreement was executed, between complainant Mary Rolfe and her firm of the one part, and Burnham, Stoepel & Co. of the other, by which complainants agreed to discontinue their suit against their copartners and to dissolve the injunction, and Zeigler agreed to return to complainant Mary notes held by him against her, to the amount of $730, as satisfied in full. It recited the chattel mortgage above referred to, and provided that Burnham, Stoepel & Co. should have the right to the actual possession under the terms of the mortgage at any time they saw fit to take possession, and were thereby authorized and obligated to place some responsible party in charge of the business. They were also authorized to make purchases for the purpose

of replenishing the staple articles and such as were necessary to successfully continue the business. The salary of such agent was to be $50 per month. Burnham, Stoepel & Co. also agreed to take charge of all the books, accounts, notes, etc., belonging to Zeigler, Streng & Rolfe, to collect them with the greatest possible dispatch, and to apply the proceeds of such collections and sales in the following manner: (1) To pay complainant Mary Rolfe a monthly rental for the store occupied by the firm; (2) to pay running expenses; (3) to pay for the merchandise bought; (4) to make payments on the secured indebtedness of the firm according to preferences, and in such order as the several mortgages were recorded; (5) to pay the unsecured indebtedness of the firm; and (6) to divide the residue between the members of the firm.

Burnham, Stoepel & Co. immediately took possession of the stock and store. Within six days thereafter they advertised the entire stock for sale under their chattel mortgage and also the Robinson & Co. mortgage, which had been assigned to them. Said goods were offered for sale in a lump. Such sale will result in a sacrifice of the goods, whose value is between $5,000 and $6,000. The bill charges that Burnham, Stoepel & Co. are not proceeding in the matter as in equity they ought to do, and prays that such sale be restrained. A preliminary injunction was issued and served while the sale was in progress, and as the entire stock was about to be sold for the sum of $2,300.

Burnham, Stoepel & Co. filed their answer, containing a demurrer clause, in which they allege that Zeigler, Streng & Rolfe made false representations as to the value of the stock; that they refused to turn over to them or their agent the accounts of the firm; that they also made false representations as to the value of certain goods in Buffalo, N. Y., which were to be turned over to them under the arrangement; that defendant Zeigler refused to give them possession of these goods; and they thereupon proceeded to foreclose the mortgage. The

defendants Zeigler and Streng answered, admitting the execution of the mortgages and the agreement as set up in the bill; alleged that the mortgage to Burnham, Stoepel & Co. and the agreement were given to save their business, and that there are sufficient assets to pay all their indebtedness and leave a substantial amount for the partners. They charge that Burnham, Stoepel & Co. never intended to carry out their agreement, and that their conduct was a fraud upon them, and pray for the appointment of a receiver. The answer of Burnham, Stoepel & Co. is supported by affidavits, and the bill and answer of Zeigler and Streng is supported by affidavits.

It appears that the accounts which Burnham, Stoepel & Co. asserted were not turned over to them were placed under the Robinson & Co. mortgage in the hands of an agent for collection, and that this agent refused to turn them over to Burnham, Stoepel & Co. for the reason that he had agreed with Robinson & Co. to collect them, for which he was to receive a stipulated consideration. Complainants deny that they made any representations as to the value of the stock. According to the affidavit of Mr. Corwin, an employé of Burnham, Stoepel & Co., which affidavit was made in their behalf, the cost value of the goods and fixtures was $5,820.11, and the goods at Buffalo were of the value of $1,264.95, against which there were charges amounting to $324. It thus appears that the cost value of the goods was near $7,000. If, as Burnham, Stoepel & Co. contend, 25 to 30 per cent. should be deducted for depreciation, the property is still worth nearly twice the amount of the secured claims against it.

*Knight & Collins,* for complainants.

*Durand & Carton,* for defendants Zeigler and Streng.

*Frank E. Robson,* for appellants.

GRANT, J. (*after stating the facts*). It is claimed by the appellants that the bill does not warrant the issuing

of an injunction or the appointment of a receiver, and that the material charges are met by their answer and the affidavits in their behalf. There is no showing of any fraud on their part in obtaining the chattel mortgage. The conclusion, however, is irresistible that it was understood and agreed that the appellants were to take charge of this business and carry it on for their own benefit and the benefit of complainants and their copartners. While, under the terms of the chattel mortgage, their debt was due, and, if the provisions of the mortgage alone were to be considered, they were proceeding to sell in a lawful manner, still the mortgage and the agreement must be construed together. They, therefore, had no right to ignore the agreement, and sell under the mortgage, unless the mortgagors had violated that agreement, or had induced them to enter into it by false and fraudulent representations. Unless they had good cause to so proceed, equity would enjoin them from the violation of their agreement. While the bill does not ask for a receiver, the answer of Zeigler and Streng, in which they claim the benefit of a cross-bill, does. The sole question, therefore, presented to the court, was whether, under all the pleadings and affidavits, the court was justified in making the order. We cannot interfere with the action of the court unless there has been a clear abuse of discretion. There were three creditors secured by three chattel mortgages. Unsecured creditors were also interested, as were Zeigler, Streng & Rolfe. The partners themselves did not agree, and it seemed to be the clear duty of the court to take that course which would best protect the interests of all the parties. This, we think, the court did.

We see no reason to interfere with the order, and it is affirmed, with costs.

LONG, C. J., MONTGOMERY and MOORE, JJ., concurred. HOOKER, J., did not sit.